New Case    Western District Courts

Patrick Crick

# APPENDIX A

Ruling On Direct APPEAL

State v. Crick, No.   71224-1-I

June 8, 2015

Pages 1 through 12

38   1 oF 1

Cover sheeT

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

               Respondent,

          v.

PATRICK S. CRICK,

               Appellant.

No. 71224-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 8, 2015

BECKER, J. — Patrick Crick appeals his conviction for child molestation in the first degree. He claims (1) the evidence does not support his conviction, (2) he was deprived of his right to a unanimous jury, (3) the court erred in denying his motions for mistrial based on incidents of juror misconduct, and (4) he was prejudiced by trial counsel's deficient performance. We reject these claims and affirm.

FACTS

In September 2012, K disclosed that Patrick Crick touched her breast and vaginal areas under her clothing one night during the summer of 2011 when she was 11 years old. The State charged Crick with child molestation in the first degree.

No. 71224-1-I/2

At trial, the testimony established that during the summer of 2011, K stayed for a period of time at the rural home Crick shared with his girlfriend, who is K's cousin, and the girlfriend's two children. K was close friends with R, the girlfriend's daughter. K liked spending time with R's family.

During this time, K and R set up a tent on the porch and slept there on some nights. One night, one or both girls asked Crick to come inside the tent with them before they fell asleep. Crick lay down between R and K. The three talked casually and then K fell asleep.

K testified that a short time later, she was awakened by someone moving inside the tent. She opened her eyes slightly and saw Crick bending over her. He touched her chest area underneath her bra. A minute or two later, he placed his hand underneath her shorts and underwear and touched her vaginal area. K was afraid, felt "frozen," and did not say anything.

Crick then moved over to where R was sleeping and "hunched" over her for a few minutes. He then kissed each girl on the forehead and left the tent. K tried to awaken R but was unable to do so. She cried herself to sleep.

The next day, K tried to act normally, but eventually told R what had happened. K asked R's mother if she could go home, but did not tell her the true reason she wanted to leave. R's mother told K she would have to wait because the family was already planning to go to K's home for a family birthday party a few days later.

K did not tell her parents or any other adults what happened because she was "scared and nervous" and "just wasn't thinking right." After that incident, K

2

No. 71224-1-I/3

did not return to R's house. K was not allowed to go to a subsequent family Christmas gathering because she failed to do a chore she was required to do. She was happy about this because she did not want to see Crick. K also told her family that she did not want R's family to come to a graduation party.

More than a year after the incident, in September 2012, K's parents found a note she had written about a month earlier when she was thinking about running away. In the note, she referred to the touching incident. K's parents confronted her about the note, and she disclosed the details of what happened in the summer of 2011. K's parents also made her tell R's mother what happened. Both R's mother and K's parents reported the incident to Child Protective Services.

R's mother remembered that R and K asked Crick to come into their tent one night in July 2011 when K was staying with the family. When Crick later came up to bed, he looked tired and told R's mother he had fallen asleep in the tent. Many months later, after she learned about K's allegations, R's mother confronted Crick, and he told her that before leaving the tent that night, he merely pulled down one of the girl's shirts. R also testified at trial but said she did not remember Crick ever coming into the tent, nor did she remember K telling her that Crick touched her.

Crick testified on his own behalf about the night he went into the girls' tent. Crick said that he inadvertently fell asleep with the girls. He said that when he woke up, he was disoriented. As he was leaving the tent, he noticed that K's shirt was pushed up and her stomach was showing. He pulled it down because it

3

No. 71224-1-I/4

was chilly. Then, he covered both girls with a blanket, kissed each one on the forehead, and left.

The jury convicted Crick as charged. He appeals.

ANALYSIS

Sufficiency of the Evidence

Crick challenges the sufficiency of the evidence supporting his conviction.

To prove that Crick committed child molestation in the first degree, the State had to prove that he had sexual contact with a person under age 12 and was at least 36 months older than K and not married to her. RCW 9A.44.083(1). "Sexual contact" is "any touching of the sexual or other intimate parts of a person" for the purpose of sexual gratification. RCW 9A .44.010(2). "Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touching was for the purpose of sexual gratification." State v. Powell, 62 Wn. App. 914, 917, 816 P.2d 86 (1991), review denied, 118 Wn.2d 1013 (1992).

When reviewing a sufficiency of the evidence challenge, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

4

No. 71224-1-I/5

K's testimony on direct examination that Crick touched her breast and vaginal area underneath her clothing when she appeared to be sleeping supports Crick's conviction. Nevertheless, Crick points out that his own testimony directly contradicted K's account and that R, the only other person in the tent, could not corroborate K's claim about the touching nor remember a later conversation about it. Crick also claims that other testimony, including R's mother's testimony that K was acting normally after the alleged incident, undermines K's credibility. However, it is the jury's responsibility, not ours, to resolve conflicting testimony and evaluate witness credibility. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds, Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The jury was not required to accept Crick's version of the incident and was free to reject the inferences that Crick argues must be drawn from the evidence. Based on K's testimony, a rational trier of fact could find beyond a reasonable doubt that Crick committed the crime of molestation of a child in the first degree.

Jury Unanimity

Crick argues that when K testified that Crick first touched her breast area and then touched her vaginal area, she described separate and distinct incidents. Accordingly, he claims the trial court erred in failing to instruct the jury on the need to be unanimous.

A defendant may be convicted only when a unanimous jury concludes that he or she committed the criminal act charged in the information. State v. Petrich, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), overruled on other grounds by State

5

No. 71224-1-I/6

v. Kitchen, 110 Wn.2d 403, 406, 756 P.2d 105 (1988). Where the State introduces evidence of multiple acts that could constitute the criminal act charged, the State must elect which of those acts it is relying on, or the trial court must instruct the jury that it must unanimously decide that the State proved the same criminal act beyond a reasonable doubt. Kitchen, 110 Wn.2d at 411. If neither of these alternatives occurs, a constitutional error arises because of the possibility that some jurors may have relied on one of the criminal acts while other jurors relied on another, resulting in a lack of unanimity on all of the elements necessary for a conviction. State v. Greathouse, 113 Wn. App. 889, 916, 56 P.3d 569 (2002), review denied, 149 Wn.2d 1014 (2003).

Although this rule applies when the State introduces evidence of multiple distinct acts, it does not apply when the evidence instead shows a continuing course of conduct. Petrich, 101 Wn.2d at 571. We apply common sense in analyzing whether the evidence shows a continuing course of conduct or several distinct acts, considering the time between each of the criminal acts and whether the acts involved the same people, occurred in the same location, and were done with the same ultimate purpose. State v. Love, 80 Wn. App. 357, 361, 908 P.2d 395, review denied, 129 Wn.2d 1016 (1996). Where the evidence shows a continuing course of conduct, the State need not elect which act it is relying on for the jury to convict; nor must the trial court instruct the jury that it must unanimously agree that the State proved the same criminal act beyond a reasonable doubt. Love, 80 Wn. App. at 361.

6

No. 71224-1-I/7

Crick did not propose a unanimity instruction at trial. But "the right to a unanimous verdict is derived from the fundamental constitutional right to a trial by jury and thus may be raised for the first time on appeal." State v. Handyside, 42 Wn. App. 412, 415, 711 P.2d 379 (1985).

Nevertheless, a commonsense view of the evidence confirms that K testified about one continuous touching incident and there was no need for either an election or a unanimity instruction. The child molestation here occurred at the same time and place—just moments apart in the tent. Each brief incident of sexual touching was done for the same purpose of sexual gratification. The trial court did not err in instructing the jury.

Motions for Mistrial

Crick contends that the trial court abused its discretion when it denied his motions for mistrial based on two separate jury incidents.

On the first day of trial, the court informed the parties after the lunch break that the jury coordinator received an e-mail from a juror who was not selected for the venire. That juror, who we will refer to as juror S, reported that after he was excused from the jury panel earlier that day, he took the elevator with two other excused jurors, one of whom said she observed the defendant mouth the words "'I didn't do this.'" Although juror S asked if the excused juror was planning to report the incident, it appeared that she did not plan to do so because she believed that others probably observed the conduct. Juror S also said the woman remarked that the defendant's action made him appear guilty. Although

No. 71224-1-I/8

he did not personally see anything, juror S decided that he should report the matter. Crick moved for a mistrial.

The court questioned each of the 13 jurors individually in the courtroom and talked with juror S by telephone. Each juror denied awareness of anyone, apart from the attorneys, attempting to provide information or pass along any message about the case. Each juror also denied overhearing any conversation about the case. The court determined that none of the sitting jurors appeared to have seen or heard about the conduct that the excused juror reported to juror S. And in any event, the court noted that the prejudice was unclear given that Crick was contesting his guilt by entering a plea of not guilty. The court denied Crick's motion for a mistrial.

Later the same day, the court received a second e-mail from a sitting juror. In the e-mail, juror 1 said that after lunch, another member of the jury asked if he had "certain feelings" about the case but denied engaging in any further discussion about the case. The court questioned juror 1, who confirmed that another juror had asked him if he was "swinging to the different sides." Juror 1 replied he did not know and moved on to different topics.

Crick renewed his motion for a mistrial. The court then questioned the other juror, juror 4, who admitted that she made a general statement along the lines of "sure hope the person is not guilty. You hate to see somebody's life ruined." The court determined that juror 4 discussed the case in violation of the court's orders and removed her from the jury panel. The court again denied

8

No. 71224-1-I/9

Crick's motion for a mistrial. The court noted that juror 1 did not engage in any inappropriate conversation and correctly reported the matter.

Crick contends that the court erred in denying his motions because both incidents involved jury misconduct warranting a new trial. "As a general rule, the trial courts have wide discretionary powers in conducting a trial and dealing with irregularities which arise. A mistrial should be granted only when . . . the defendant has been so prejudiced that nothing short of a new trial can insure that [the] defendant will be tried fairly." State v. Gilcrist, 91 Wn.2d 603, 612, 590 P.2d 809 (1979). We will disturb a court's decision on a motion for mistrial only if the court abused its discretion. State v. Balisok, 123 Wn.2d 114, 117, 866 P.2d 631 (1994).

Crick claims that the court's investigation into the first incident involving his alleged attempt to communicate with the jury revealed that at least two jurors were biased against him and inappropriately discussed his conduct and probable guilt. The chief problem with Crick's argument is that none of the members of the venire who were reportedly involved in the conversation or overheard the conversation were seated on the jury. Only three excused jurors were in the elevator, and each sitting juror denied having seen or heard anything about the case apart from the lawyers' statements. So even assuming Crick could establish incurable prejudice based on his own conduct of attempting to communicate his innocence, the court fully investigated the matter and that investigation provided no basis to conclude that the reported incident affected the jury.

9

No. 71224-1-I/10

With regard to the second incident, Crick fails to explain why the court's dismissal of juror 4 did not adequately address the potential prejudice caused by any misconduct. Nothing in the record indicates that juror 4 gave her opinion or imparted any prejudicial information to juror 1 or to any other juror. And contrary to Crick's argument, it is not clear that the conversation between the jurors took place before the court questioned each individually nor is it clear why the sequence makes a difference. When individually questioning the jurors, the court was attempting to discover whether they were aware of an attempt to impart information about the case and the court did not specifically inquire about whether anyone had asked about their feelings or opinions.

The court acted within its discretion in denying both of Crick's motions for a mistrial.

Ineffective Assistance of Counsel

Finally, Crick argues that he was deprived of the effective assistance of counsel because his trial counsel failed to request a unanimity instruction and was "admittedly" unprepared for trial.

To establish ineffective assistance of counsel, a defendant must overcome a strong presumption that counsel was effective by demonstrating that (1) counsel's performance was deficient by an objective standard of reasonableness and (2) the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-89, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Deficient performance prejudices a defendant if there is a "reasonable probability that, but

10

No. 71224-1-I/11

for counsel's deficient performance, the outcome of the proceedings would have been different." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

As previously explained, Crick was not entitled to a unanimity instruction. Therefore, his counsel did not perform deficiently by failing to request one. Nor is there anything in the record to suggest that Crick's counsel rendered constitutionally deficient performance due to lack of preparation. It is true that in arguing in support of a continuance before trial, Crick's counsel stated that he was unprepared to try the case because he had inadequate time to review written transcripts of previously provided recorded witness interviews, having just received the newly-prepared transcripts a few days before trial. But there is no evidence that counsel was actually unprepared or that Crick was prejudiced. Counsel acknowledged that he received the recorded witness interviews approximately six months earlier and had listened to the material. At the start of trial, counsel also acknowledged that he had the transcripts of the recorded interviews over the weekend before trial. Defense counsel used the transcripts at trial during cross-examination. Crick does not identify any discrepancy between the recorded versions of the interviews and the transcripts or any deficiency in counsel's performance caused by inadequate review of the transcripts. And beyond generally asserting that the "theory of defense likely suffered," he fails to establish any reasonable probability that the outcome of the trial would have been different had counsel had more time to review the transcripts.

11

No. 71224-1-I/12

Affirmed.

WE CONCUR:

_____ _Becker, J_

_____ _Leach, J_          _Appelwick, J_

12

# APPENDIX B

PERSONAL RESTRAINT PETITION

DIVISION 1, No. 75685-1-I

August 30, 2016

Pages 1 through 18

39   1 of 2   cover sheet

IN THE COURT OF APPEALS FOR WASHINGTON STATE

DIVISION I

---

IN 'RE THE PERSONAL RESTRAINT PETITION OF:

PATRICK CRICK,

PETITIONER.

---

**PERSONAL RESTRAINT PETITION**

---

```
PATRICK CRICK
PETITIONER, PRO-SE
AHCC/R-A30/ :370172
BOX 2049
AIRWAY HEIGHTS, WA.
            99001
```

2

A. STATUS OF PETITIONER

Patrick Crick (hereinafter "Crick") challenges his Snohomish County conviction for first degree child molestation and the subsequently imposed fifty-one (51) months to life sentence.

(Snohomish County cause No. 13-1-00590-0)

Mr. Crick is currently confined at the Washington State Corrections Center at Airway Heights, Washington. This petition, filed within one year of the September 25, 2015 mandate of his direct appeal, is his first collateral attack on his judgment of conviction.

B. STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Court of Appeals, Division I described the facts on direct appeal as follows:

In September 2012, K disclosed that Patrick Crick touched her breast and vaginal areas under her clothing one night during the summer of 2011 when she was 11 years old. The State charged Crick with child molestation in the first degree.

At trial, the testimony established that during the summer of 2011, K stayed for a period of time at the rural home Crick shared with his girlfriend, who is K's cousin, and the girlfriend's two children. K was close friends with R, the girlfriend's daughter. K liked spending time with R's family.

During this time, K and R set up a tent on the porch and slept there on some nights. One night, one or both girls asked Crick to come inside the tent with them before they fell asleep. Crick laid down between R and K. The three talked casually and then K fell asleep.

PRP OF CRICK - 1

K testified that a short time later, she was
awakened by someone moving inside the tent. She
opened her eyes slightly and saw Crick bending
over her. He touched her chest area underneath
her bra. A minute or two later, he placed his
hand underneath her shorts and underwear and
touched her vaginal area. K was afraid, felt
"frozen" and did not say anything.

Crick then moved over to where R was sleeping
and "hunched" over her for a few minutes. He then
kissed each girl on the forehead and left the
tent. K tried to awaken R but was unable to do
so. She cried herself to sleep.

The next day, K tried to act normally, but
eventually told R what happened. K asked R's mother
if she could go home, but did not tell her the
true reason she wanted to leave. R's mother told
K she would have to wait because the family was
already planning to go to K's for a family birthday
party a few days later.

K did not tell her parents or any other adult
what happened because she was "scared and nervous"
and "just wasn't thinking right." After that
incident, K did not return to R's house. K was
not allowed to go to a subsequent family Christmas
gathering because she failed to do a chore she
was required to do. She was happy about this
because she did not want to see Crick. K also
told her family she did not want R's family to
come to a graduation party.

PRP OF CRICK - 2

More than a year after the incident, in September
2012, K's parents found a note she had written
about a month earlier when she was thinking about
running away. In the note, she referred to the
touching incident. K's parents confronted her
about the note , and she disclosed the details
of what happened in the summer of 2011. K's parents
also made her tell R's mother what had happened.
Both R's mother and K's parents reported the
incident to Child Protective Services.

R's mother remembered that R and K asked Crick
to come into their tent one night in July 2011
when K was staying with the family. When Crick
later came to bed, he looked tired and told R's
mother he had fallen asleep in the tent. Many
months later, after she learned about K's
allegation, R's mother confronted Crick, and he
told her that before leaving the tent that night,
he merely pulled down one of the girls shirt.
R also testified at trial but said she did not
remember Crick ever coming into the tent, nor
did she remember K telling her that Crick touched
her.

Crick testified on his own behalf about the night
he went into the girl's tent. Crick said that
he inadvertently fell asleep with the girls. He
said that when he woke up, he was disoriented.
As he was leaving the tent, he noticed that K's
shirt was pushed up and her stomach was showing.
He pulled it down because it was chilly. Then,
he covered both girls with a blanket, kissed each

PRP OF CRICK - 3

one on the forehead, and left. (<u>State v. Crick</u>, COA NO. 71224-1-I).

Based upon testimony presented at trial, the jury found defendant Patrick Crick "guilty" of child molestation in the first degree.(<u>State v. Crick</u>, Snohomish NO. 13-1-00590-0).

At the sentencing phase of the trial process, the Court was presented with evidence by defense counsel, with said evidence being given over by a states witness.(RP 12-2-13 5:8-23). According to the testimony of this state's witness, as held by the record (RP 10-30-13 334 and 480-82), this evidence was previously known to exist by the state, having been requested by the prosecutor and it's investigative agent, and being given into the care of the state, but not discovered to the defense until after jury deliberation and verdict.

Petitioner appealed as a matter of right. However, appellate counsel did not raise these, and several other issues believed by the appellant to have existed within the trial, including but not limited to a violation of his right to confrontation, and due process.

Petitioner asserts and certifies for the first time in this petition that the withheld evidence, impermissible vouching of credibility, and Brady/Giglio violations as alleged against the Snohomish County Prosecutor, are relevant to review of this petition, have prejudiced Petitioner's right to a fair trial, and have cumulatively caused the Defendant to be unlawfully restrained. To support these claims Mr. Crick demonstrates the trial court record as held under Snohomish County Superior Court NO. 13-1-00590-0, and the evidences contained therein.

C. <u>ARGUMENT</u>.

    I. Crick Was Denied Both the Right to a Fair Trial
      and the Effective Assistance of Counsel on Appeal.

      A. <u>Appellate Counsel Inexplicably Failed to
        Diligently and Promptly Represent the
        Appellant.</u>

PRP OF CRICK - 4

On June 8, 2015, and subsequent to review of Defendant's direct appeal, this Court entered it's decision against the appellant.(State v. Crick, COA No. 71224-1-I). Accordingly, Appellant Crick sought review of that decision as a matter of right through his paid appellate counsel, John Crowley, and pursuant to the authority of RAP Rule 12.4.

On July 8, 2015, a full thirty (30) days after this Court filed it's decision, Mr. Crowley filed the appellant's motion for reconsideration which was promptly and procedurally barred from review as untimely according to RAP Rule 12.4(b) on July 27, 2015. See State v. Crick, 2015 Wash. App. Lexis 1674 (COA No. 71224-1-I).

RAP 12.4(b), states:

> The party must file the motion for reconsideration within twenty (20) days after the decision the party wants reconsidered is filed in the appellate court.

In the instant case, there is no dispute that appellate counsel filed a formally correct motion for reconsideration. That is, the motion summarized the record and listed possible legal issues for the appellate court to consider in reviewing the record. However, there is no legitimate reason for counsel not to file a traditional motion for reconsideration, untimely as it is contrary to court rule, which counsel knew or should have known by reason of his professional license.

"Attorney's failure to file ... within time limits imposed by Court violated disciplinary rule [RPC 1.3] requiring a lawyer to act with reasonable diligence and promptness, and rule [RPC 3.2] requiring a lawyer to make reasonable efforts to expedite litigation consistent with the interests of the client." In re Disciplinary Proceeding Against Lopez, 153 Wash. 2d 570, 106 P.3d 221 (2015).

PRP OF CRICK - 5

Effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To Establish that appellate counsel's representation was unconstitutionally inadequate, Crick must show that counsel's performance was deficient - i.e. that it fell below an objective standard of reasonableness - and that the deficient performance was prejudicial. <u>Strickland</u>, 466 U.S. at 687-88. The proper measure of attorney performance is reasonableness under prevailing professional norms. Id. at 688. In order to demonstrate prejudice arising from counsel's deficient performance, Crick must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694.

For purpose of meeting the performance prong of <u>Strickland</u> the petitioner cites the Rules of Professional Conduct (RPC), and more specifically RPC 1.3 and 3.2, to demonstrate the professional norms of attorneys practicing law in Washington State;

<u>RPC 1.3</u>, states:

A lawyer shall act with reasonable diligence and promptness in representing a client.

<u>RPC 3.2</u>, states:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

It is a well recorded fact that appellate counsel failed to timely file appellant's motion for reconsideration which per se violated these prevailing professional norms of Washington State. Had counsel filed the motion timely in accordance with RAP 12.4(b), Crick would have been entitled to review as a matter of right. Counsel's failure to do so has substantially prejudiced that right, and does therefore meet the first prong of the <u>Strickland</u> test. <u>In re Pers. Restraint of Maxfield</u>, 133 Wn. 2d 332,344, 945 P.2d 196 (1997). Id. at 344.

PRP OF CRICK - 6

Article I, §22 of the Washington Constitution provides that "[i]n criminal prosecutions the accused shall have... the right to appeal in all cases." The Supreme Court of Washington has described this right of appeal as directly related to a defendant's right to a constitutionally fair trail, and as inapplicable to collateral review related to the criminal proceeding. In re Pers. Restraint of Coats, 173 Wn. 2d 123, 140, 267 P.3d 324 (2011). Id. at 140, "Defendants have a right to a fair trial. The defendant's right to a fair trail is protected by a right of direct appeal."

"[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." Boddie v. Connecticut, 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed. 2d 113 (1971).

In effect, Mr. Crick was denied his right to a fair trial through the deprivation of due process as a real and direct cause of his appellate counsel's unconstitutional ineffective representation. Petitioner asserts that this is a structural error and prejudice must be presumed.

## II. Denial of the Right to Appeal is Structural Error And is Not Subject to Harmless Error Analysis Because Prejudice is Presumed.

Mr. Crick has shown both the denial of his right to appeal and to effective assistance of counsel on appeal. His entitlement to relief, therefore, does not require an analysis under Strickland to determine whether prejudice resulted, or under Chapman v. California, 386 U.S. 18 (1967) to determine whether any error is harmless. Denial of the right to an appeal is "structural" error of the kind described in Strickland and United States v. Cronic, 466 U.S. 648 (1984). Where a defendant

is effectively left without counsel at a critical stage of criminal proceedings, the "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." Strickland, at 692; Harding v. Lewis, 834 F.2d 853 (9th Cir. 1987), cert. denied, 488 U.S. 871 (1988) (Strickland does not apply to complete absence of counsel at critical stage of proceedings); Lombard v. Lynaugh, 868 F.2d 1475, 1480-81 (5th Cir. 1989).

In the instant case the record makes no showing that appellate counsel made any attempt to correct this error, or in minimus declare to the court that the error was due to his omission. This demonstrates counsel abandoned his lawyer's duty to advocate on behalf of his client. See Penson v. Ohio, 488 U.S. 75, 85 (1988)(assistance of counsel on appeal requires both forceful and careful advocacy "to ensure that rights are not foregone and that substantial legal and factual arguments are not inadvertently passed over"). Whether counsel deliberately or negligently failed to act, counsel constructively denied Crick his Sixth Amendment right to counsel on direct appeal, with Mr. Crick being denied a full appeal as a real consequence to counsels failure to timely act according to his clients legal interests.

According to these facts, this court can remedy the claims of ineffective assistance of appellate counsel by reinstatement of petitioner's right to a direct appeal with substitute counsel being free to raise any issues that could have been raised on the first direct appeal. See In re Pers. Restraint Petition of Frampton, 45 Wn.App. 554, 563, 726 P.2d 486 (1986).

III.   The State's <u>Brady-Giglio</u> Violations and
       Knowing Misrepresentation of Facts at
       Trial Regarding the Testimony of "K",
       Brady Beckmyer, Melissa Beckmyer
       Prejudiced Crick and Rendered His Trial
       Unfair.

A.   <u>Brady-Giglio Violations</u>.

"There is an epidemic of <u>Brady</u> violations abroad in the
land. Only judges can put a stop to it." <u>United States v. Olsen</u>,
___F.3d___, 2013 WL 6487376 at 1 (December 10, 2013)(dissent
to denial of rehearing en banc; collecting recent cases at slip
op.6).

Petitioner Crick has a due process right to receive from
the State exculpatory impeachment material as part of the
Constitutional guarantee to a fair trial. <u>Brady v. Maryland</u>,
373 U.S. 83, 87 (1963)(due process requires disclosure of
evidence in government's control that is favorable to the accused
and material to guilt or punishment); <u>United States v. Agurs</u>,
427 U.S. 97, 112-13 (1976); <u>Kyles v. Whitley</u>, 514 U.S. 419,
435 (1995)(exculpatory evidence is evidence the suppression
of which would "undermine the confidence in the verdict");
<u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972)(exculpatory
evidence includes impeachment evidence affecting witness
credibility where the witness's credibility is likely
determinative of guilt or innocence").

In this case, Petitioner Crick asserts that witnesses
"K", Brady Beckmyer, and Melissa Beckmyer provided false
testimony under oath - testimony that involved the events
surrounding Christmas of 2011. In all three instances here the
State and witnesses knew of, but failed to disclose the fact
of their misrepresentation of the events of that day, and more
specifically the fact that "K" had attended that event contrary
to their repetitive and common testimony.

PRP OF CRICK - 9

A prosecutor may not remain silent when a prosecution witness misstates the realities of the facts in giving testimony. See, Cambell v. Reed, 594 F.2d 4, 7 (4th Cir. 1979)(habeas corpus reversed for Giglio and Napue violations). False testimony, even if not solicited by a prosecutor, must be corrected. Napue v. Illinois, 360 U.S. 264, 269 (1959). "The principle that the state may not knowingly use false evidence applies where such evidence goes only to the credibility of a witness, since '(t)he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence,'" Cambell, 549 F.2d at 7 (citing Napue); and see Hayes v. Brown, 399 F.3d 972, 987 (9th Cir. 2005)(favorably citing Cambell and noting "[W]e do not believe that the fact that the jury was apprised of other grounds for believing that the witness... may have had an interest in testifying against petitioner turned what was otherwise a tainted trial into a fair one"). The obligation to correct misleading statements by a state's witness must not be shirked. United States v. Alli, 344 F.3d 1002, 1006-08 (9th Cir. 2003)(prosecutor's independent obligation to correct known misstatements arises immediately).

Here, however, the prosecutor either solicited the misleading testimony or sat silent in the face of misleading testimony. It certainly was not in keeping with the requirements of CrR 4.7(a)(3) or the spirit of Brady.

This Court should find that the principles enunciated in Giglio and Napue are applicable to this case. The Court should inquire into the materiality of the withheld evidence and reflect upon the effect that the suppressed evidence surrounding these witnesses false testimony would have had in the defendant's arguments to the jury. Materiality is well established:

 a. the state has acknowledged the paramount importance of its witnesses' credibility, RP 11-1-13 498-500 and 567:23-25,

 b. the lack of physical evidence against Crick,

 c. K's testimony testimony of animus concerning being in the presence of Crick,

PRP OF CRICK - 10

    d. The utter absence of any collaborative testimony
       where a third party was present as a witness.
    e. the victim's shifting claims about the incident, and
       how it occurred.

    The State's suppression of the true facts surrounding
the events of Christmas of 2011, dealt a critical blow to Crick's
defense because the evidence was a principle means of impeaching
their credibility (in addition to their personal biases against
Crick). The State's failure to disclose the photographic evidence
which testified to the fact that K had in fact attended the
Christmas 2011 event, and correct the false impressions made
by the witnesses' testimony bolstered each witnesses' credibility
by obscuring the true fact that K had returned to the home of
Crick subsequent to the alleged event.

    Viewing the record as a whole, the Court should conclude
that the jury's verdict might have been different had it known
the fact that these witnesses were willing to provide false
testimony under oath against the defendant which causes their
credibility to be questioned. "Here the prosecution allowed
a false impression to be created at trial when the truth of
the matter would have directly impugned the veracity of its
key witness[es]." United States v. Sutton, 542 F.2d 1239, 1243
(4th Cir. 1976)(citing Napue).

    From the record the Court will see that Christmas 2011
pictures were surrendered to the state by witness Tracy Conrad
(RP 10-30-13 480-82, testimony of Det. Tyler Quick), and was
not given to the defense until after jury deliberation and
verdict.(RP 12-2-13 5:8-23). It is a material fact that it was
not the prosecution that proffered these pictures, but in fact
witness Tracy Conrad.

PRP OF CRICK - 11

Eliminating impeachment of these witnesses' credibility for dishonesty gave the prosecution a further undue advantage and prejudiced Crick. In <u>State v. Hudlow</u>, 99 Wn.2d 1, 15 (1983), the State Supreme Court held that two test determine whether a failure to admit impeachment evidence against a State's witness violated the defendant's right to confrontation. First, the evidence must be relevant. Second, if relevant, the test requires that the State give a compelling reason that outweighs the interests of the defendant in having the evidence admitted.

The State cannot provide a compelling reason to outweigh its misstatement of the facts, as well as allowing a witness , in fact several witnesses, to testify to the same false evidence. The State was out-and-out incorrect in presenting evidence to the jury about "[K] managed to get forbidden from going to family Christmas 2011 because she didn't do her chores." (rp 11-1-13 567:23-25). An examination of the full record demonstrates Crick's right to confront K, Brady Beckmyer, and Melissa Beckmyer was truncated.

### B.   The State Through It's Prosecuting Attorney Impermissibly Vouched For The Credibility of Witness Testimony.

During closing arguments, the prosecutor repeatedly expressed his personal opinion about the credibility of witnesses - a decision that must be left in the exclusive hands and minds of jurors. Petitioner contends that certain of the prosecutor's closing remarks constituted misconduct. Crick asserts that the prosecutor also focused on facts deemed non-admissable by the court.

It is improper for a prosecutor to personally vouch for a witness's credibility. See <u>State v. Brett</u>, 126 Wash. 2d 136, 175, 892 P.2d 29 (1995), cert. denied, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed. 2d 858 (1996).

Prosecutors may, however, argue inference from the evidence

and this court will not find prejudicial error "unless it is 'clear and unmistakable' that counsel is expressing a personal opinion." Brett, 126 Wash.2d at 175, 892 P.2d 29(quoting State v. Sargent, 40 Wash.App. 340, 344, 698 P.2d 598 (1985)).

According to State v. Green, 71 Wn.2d 372, 381, 428 P.2d 540 (1967), this Court views the "prejudicial or inflammatory effect" of the improper remarks "in context with the earlier evidence and the circumstances of the trial in which the remarks were made."

In this instant case, read in context, and especially considering the corrective instruction of the court (RP 10/31/13, p. 498-505), the following remarks of the prosecutor was both inflammatory and denied Crick a fair trial;

> "All of those things go into your consideration of who's credible and who's not. And Kimlyn is the only one who's credible." (RP 11/1/13, 569:17-19).

> "Now, of course, the exact nature of how that touching went down, that's all why we're here today, of course, but for [Crick] to admit that he did touch Kimlyn in a way that I submit to you is entirely uncredible and unreasonable does shed some light and is a source of corroboration for you to know what Kimlyn told you was a real memory and it really did happen. (RP 11-1-13, 572:10-16).

In making such remarks, the prosecutor improperly argued that Crick, not the State, carried the burden of production to present evidence regarding Kimlyn's credibility. When weighed against the fact that this very evidence was withheld from both Crick, and the jury, the petitioner could make nuanced arguments about the impropriety of the remarks, it is the continued remarks of the prosecutor which says it all:

PRP OF CRICK - 13

"I have to say something about the defendant's testimony,
because I submit to you that it is entirely uncredible."
(RP 11-1-13, 578:15-16).


"Talk it out, and you will find that any way it shakes
out, Kimlyn's testimony is the only credible testimony
in this case." (RP 11-1-13, 580:20-22).


In this case, the jury's verdict turned almost entirely
upon the credibility of the complaining witness and the
defendant. There was no physical evidence to corroborate Kimlyn's
testimony about the abuse. Witnesses Brady Beckmyer, Melissa
Beckmyer, Tracy Conrad, and Detective Tyler Quick testified
only that Kimlyn had disclosed the fact of abuse, and the
evidence arguably supported either party's version of the events.
Crick contends that a rational jury probably would not have
returned the same verdict without the prosecutor's improper
remarks, especially had the jury been given the opportunity
to fully weigh Kimlyn's testimony with those evidences that
the State withheld.

C.  **The State Through It's Prosecuting Attorney**
    **Impermissably Presented Evidence Deemed Not Admissable**
    **And Vouched For The Credibility Of Witness Testimony.**

As part of the same closing argument shown above, the
prosecutor also sought to discredit the only other person present
as a witness to the events;

"And I'm sorry I have to do this, and ,Rhiannen, I'm sorry
I have to do this, but the third person in that tent,
Rhiannen, was not credible at all."
(RP 11/1/13, 572:21-23).


PRP OF CRICK - 14

It is a recorded fact that the court gave corrective instruction to the prosecutor by finding Rhiannen's testimony did not include any prior inconsistent statements (RP 10/31/13, 503:14-25), according to ER Rule 801(d)(1), and ruling that that inquiry into these statements of Rhiannen would not be allowed as inadmissable pursuant to the hearsay rule. (RP 10/31/13, 504:19-22). This ruling was predicated by the objection of defense counsel (RP 10/31/13, 500:20-23), and is preserved for review here accordingly. For the prosecutor to then repeatedly reference this inadmissible evidence in his closing arguments was uncalled for and impermissably asked the jury to be invited to determine guilt based on said inadmissible evidence.

In his persistent and ill-intentioned argument that Rhiannen's out of court statements were inconsistent with her statements at trial, the prosecutor left the jury with the impression that this witness had a great deal of knowledge which was either favorable or unfavorable to the State which, but for the court's ruling would have been revealed. This fact is manifest in the jury's request to see the records surrounding this very testimony. (RP 11/1/13, 622:1-4), and the pattern of reiterating these same arguments had the effect of telling the jury what these inadmissible statements were. See State v. Alexander, 64 Wn.App. 147, 155, 822 P.2d 1250 (1992). Id. at 155. This repeated attempt to bolster Kimlyn's testimony and credibility by repeatedly arguing that Rhiannen was not credible by instilling inadmissible evidence in the juror's minds was so flagrant as to constitute misconduct. This error alone compels reversal as it not only demonstrates the very prejudice to petitioner's ability to obtain a fair trial by an unbiased jury, with the verdict being based on admissible evidence, it also show's the prosecutor's ill-intentioned desire to win at-all-costs, even if the cost was paid by the

PRP OF CRICK - 15

constitutional rights of the defendant. A prosecutor may not
make statements that are unsupported by the evidence and
prejudice the defendant. State v. Jones, 71 Wn.App. 798, 808,
863 P.2d 85 (1993), review denied, 124 Wn.2d 1018 (1994).

> "...[F]or Rhiannen to tell us that Patrick never came
> into the tent at all is simply uncredible."
> (RP 11/1/13, 573:3-4).

Let the record show that Rhiannen never testified to the fact
that the defendant "never came into the tent at all", only that
she did not possess any memory of him being in the tent on the
night in question.

## IV.   MR. CRICK IS ENTITLED TO A NEW TRIAL BASED ON THE CUMULATIVE PREJUDICE FROM MULTIPLE ERRORS, INCLUDING THE ERRORS WHICH OCCURRED AT APPEAL.

Where the cumulative effect of multiple errors so infected
the proceedings with unfairness, a resulting conviction or death
sentence is invalid. See Kyles v. Whitley, 514 U.S. 419, 434-
35, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

As the Ninth Circuit pointed out in Thomas v. Hubbard,
273 F.3d 1164 (9th Cir.2001);

> "[i]n analyzing prejudice in a case in which it is
> questionable whether any single trial error examined
> in isolation is sufficiently prejudicial to warrant
reversal, this court has recognized the importance of considering
> the cumulative effect of multiple errors and not simply
> conducting a balkanized, issue-by-issue harmless error
> review." Id. at 1178(internal quotations omitted)(citing
United States v. Federick, 78 F.3d 1370, 1381 (9th Cir. 1996));
See also Matlock v. Rose, 731 F.2d 1236, 1244(6th Cir. 1984)
("Errors that might not be so prejudicial as to amount to a
deprivation of due process when considered alone, may
cumulatively produce a trial setting that is fundamentally
unfair.").

D. RELIEF SOUGHT.

Crick's jury was left unaware of powerful reasons to question the credibility of State's witnesses, especially the complaining witness. They were kept in the dark about Kimlyn's presence at the families 2011 Christmas event after the incident in question, and denied evidence that disputed each of those witnesses testimony. The truth-seeking process is corrupted by the State's withholding or active suppression of evidence favorable to the accused, repeatedly arguing inadmissible evidence under ER 801(d)(1), and impermissably vouching for the credibility of witnesses - who he knew or should have known were testifying falsely.

Petitioner asserts that each of the errors described herein warrants relief on their own merits. However, considered cumulatively, they certainly resulted in sufficient prejudice to merit, as a whole, the need for a new trial. The competent evidence presented by the petitioner in support of these claims, which at a minimum, demonstrates a need for an evidentiary hearing to determine the truth of the facts presented in this petition - entitle Crick to a new trial.

**THEREFORE**, it is the prayer of petitioner Patrick Crick that this Court  - overturn his conviction and Judgment of Sentence under Snohomish County Cause No. 13-1-00590-0, WITH PREJUDICE, or REMAND the defendant for a NEW TRIAL.

//
//

PRP OF CRICK - 17

E. OATH OF PETITIONER.

STATE OF WASHINGTON          )
                             )ss.
County of Spokane            )


        After being first duly sworn, on oath, I depose and say:
1. I am the petitioner;
2. That I have read the petition, know of its contents, and
   believe the petition is true.


                                    _____
                                    PATRICK CRICK


SUBSCRIBED AND SWORN before me this  5  day of  August ,2016.


_____
Notary Public in and for the
State of Washington.

My commission expires:

July 19, 2020


TAMRA AVERY
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
JULY 19 2020


PRP OF CRICK - 18

# APPENDIX C

ORDER DISMISSING PRP

October 3, 2016

Pages 1 through 4

1 of 1

Cover sheet

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

In the Matter of the Personal )
Restraint of: )    No. 75685-1-I
)
PATRICK S. CRICK, )    ORDER OF DISMISSAL
)
Petitioner. )
_____)

Patrick Crick was convicted by a jury of child molestation in the first degree

following a jury trial in Snohomish County Cause No. 13-1-00590-0 based upon

testimony that he inappropriately touched an eleven year-old friend of the family.  This

court upheld Crick's conviction on appeal.  See State v. Crick, No. 71224-1-I.  Crick filed

this personal restraint petition seeking relief from his conviction.  He claims that: (1)

appellate counsel was constitutionally deficient, (2) the State knowingly presented false

evidence, (3) the prosecutor presented inadmissible evidence and impermissibly

vouched for the credibility of State witnesses, and (4) he was deprived of a fair trial due

cumulative error.  In order to obtain collateral relief by means of a personal restraint

petition, Crick must demonstrate either an error of constitutional magnitude that gives

rise to actual prejudice or a nonconstitutional error that inherently results in a "complete

miscarriage of justice."  In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d

506 (1990).

Crick asserts that appellate counsel was constitutionally deficient because he

filed an untimely motion for reconsideration, which was then denied.  Crick contends he

was thus denied his right to appeal.

No. 75685-1-I-I/2

To prevail on a claim of ineffective assistance of appellate counsel, Crick must show that appellate counsel failed to raise a meritorious legal issue and that he was "actually prejudiced by the failure to raise or adequately raise the issue." In re Pers. Restraint of Dalluge, 152 Wn.2d 772, 787, 100 P.3d 279 (2004). Crick exercised his right to appeal. This court reviewed the following issues raised by counsel: (1) sufficiency of the evidence, (2) jury unanimity, (3) denial of motions for mistrial, and (4) ineffective assistance of trial counsel. Crick does not contend that appellate counsel failed to raise a legal issue upon which he would have prevailed.

Even if Crick could establish that filing an untimely motion for reconsideration amounts to constitutionally deficient performance, he fails to establish, prejudice. Crick does not address the standard for granting reconsideration under RAP 12.4 and there is nothing in the record to suggest that such a motion would have been granted had it been timely filed. As explained, Crick cannot demonstrate that there is a reasonable likelihood that the outcome would have been different but for counsel's delay in filing the motion.

Next, Crick contends that the prosecutor committed misconduct with regard to the testimony of several witnesses who said that the victim did not attend a family Christmas celebration several months after the alleged touching incident. Crick contends that the prosecutor either deliberately elicited this false testimony or "sat silent," knowing the statements to be untrue. He also suggests that the State withheld from the defense photographs proving that the victim was at a family Christmas gathering in 2011 and provided the evidence to the defense only after the jury returned its verdict.

2

No. 75685-1-I-I/3

The record does not support Crick's argument. There is nothing in the record to support the claim that the State knowingly presented false testimony. The record indicates that Crick's partner, not the State, possessed and belatedly provided photographs to defense counsel purporting to show that the victim and Crick were both present at a family gathering. The photographs would not have undermined the evidence presented by the State that the victim did not wish to be around Crick after the incident and did not willingly return to his home. It does not appear that either of the photographs were taken at Crick's home, nor were they date-stamped. Crick fails to demonstrate deficient performance or prejudice.

Crick also contends that some of the prosecutor's closing remarks amounted to misconduct because he personally vouched for the credibility of State witnesses and thereby suggested that Crick had the burden to prove that the victim was not credible. "It is improper for a prosecutor personally to vouch for the credibility of a witness." State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). Prosecutors, however, have wide latitude to argue reasonable inferences from the evidence, and prejudicial error will not be found unless it is clear and unmistakable that counsel is expressing a personal opinion. Brett, 126 Wn.2d at 175. Here, the prosecutor made legitimate arguments about credibility that were based on the evidence. He did not express his personal beliefs about the veracity of the witnesses. Nothing in the prosecutor's remarks improperly shifted the burden of proof.

Finally, Crick argues that cumulative error requires a new trial. But claims which alone are insufficient to grant relief in a personal restraint petition do not become

No. 75685-1-I-I/4

meritorious simply by aggregating them into one claim.  In re Pers. Restraint of Pirtle,

136 Wn.2d 467, 496-97, 965 P.2d 593 (1998).

Crick "fails to present an arguable basis for collateral relief either in law or in fact,

given the constraints of the personal restraint petition vehicle." In re Pers. Restraint of

Khan, 184 Wn.2d 679, 686-87, 363 P.3d 577 (2015). Accordingly, he fails to

demonstrate that he is unlawfully restrained and his petition must be dismissed.

Now, therefore, it is hereby

ORDERED that the personal restraint petition is dismissed under RAP 16.11(b).

Done this _3rd_ day of _October_, 2016.

_Trickey, A CJ_
Acting Chief Judge

# APPENDIX D

## ORDER DENYING REVIEW

SUPREME COURT OF WASHINGTON
No. 93752-4

June 9, 2017

Pages 1 through 4

1 of 1
Cover sheet

# THE SUPREME COURT
### STATE OF WASHINGTON

**SUSAN L. CARLSON**
SUPREME COURT CLERK

**ERIN L. LENNON**
DEPUTY CLERK/
CHIEF STAFF ATTORNEY



**TEMPLE OF JUSTICE**
P.O. BOX 40929
OLYMPIA, WA 98504-0929

(360) 357-2077
e-mail: supreme@courts.wa.gov
www.courts.wa.gov

June 9, 2017

Patrick S. Crick
#370172
Airway Height Corrections Center
P.O. Box 2049
Airway Heights, WA 99001

Hon. Richard Johnson, Clerk **(sent by e-mail only)**
Division I, Court of Appeals
One Union Square
600 University Street
Seattle, WA 98101

Re:     Supreme Court No. 93752-4 - Personal Restraint Petition of Patrick S. Crick
        Court of Appeals No. 75685-1-I

Clerk and Mr. Crick:

        Enclosed is a copy of the RULING DENYING REVIEW, signed by the Supreme Court
Deputy Commissioner on this date in the above entitled cause.

                                    Sincerely,

                                    Susan L. Carlson
                              for   Supreme Court Clerk

SLC:mt

Enclosure as stated



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

In the Matter of the Personal Restraint of:

PATRICK S. CRICK,

                    Petitioner.

NO. 93752-4

RULING DENYING REVIEW

       Patrick Crick was convicted of first degree child molestation. Division One of the Court of Appeals affirmed the judgment and sentence on direct appeal. Mr. Crick subsequently filed a timely personal restraint petition in the Court of Appeals, which the acting chief judge dismissed. Mr. Crick now seeks this court's discretionary review. RAP 16.14(c).

       To obtain review in this court, Mr. Crick must demonstrate that the Court of Appeals decision conflicts with a decision of this court or with another Court of Appeals decision, or that he is raising a significant constitutional question or an issue of substantial public interest. RAP 13.4(b); RAP 13.5A(a)(1), (b). And as a personal restraint petitioner challenging his judgment and sentence, Mr. Crick must establish that a constitutional error occurred resulting in actual and substantial prejudice or that a nonconstitutional error occurred that inherently caused a complete miscarriage of justice. *In re Pers. Restraint of Gomez,* 180 Wn.2d 337, 347, 325 P.3d 142 (2014). If Mr. Crick fails to present an arguable basis for collateral relief in law or fact given the

Case 2:17-cv-01348-JLR-BAT   Document 1-1   Filed 09/08/17   Page 42 of 43

constraints of the personal restraint petition procedure, his collateral challenge must be dismissed as frivolous under RAP 16.11(b). *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 686-87, 363 P.3d 577 (2015).

Mr. Crick contends that the State knowingly presented false testimony or failed to correct testimony it knew to be false on whether the complaining witness attended a family Christmas celebration. It is improper for a prosecutor to knowingly solicit or fail to correct false evidence. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). This issue is tied to Mr. Crick's unsuccessful post-verdict motion to arrest his judgment. A witness produced photographs purporting to show that the complaining witness attended the family celebration, which occurred several months after the molestation. Mr. Crick has not produced these photographs in support of his personal restraint petition, but the trial court examined the photographs. Mr. Crick's assertion at that time was that the photographs impeached testimony concerning the complaining witness's attendance at the celebration and her desire to avoid contact with Mr. Crick. But the photographs were not date stamped, and Mr. Crick did not effectively refute the State's assertion that the photographs were not taken at the family home where the Christmas celebration occurred. The trial court denied the motion to arrest the judgment. Here, Mr. Crick inappropriately tries to relitigate this issue in the guise of a collateral challenge, but even if the issue is considered anew, Mr. Crick does not show that the complaining witness and other witnesses actually gave false testimony.

Mr. Crick further asserts appellate counsel was ineffective in failing to timely move for reconsideration of the Court of Appeals decision affirming his judgment and sentence. To establish ineffective assistance of appellate counsel, Mr. Crick must demonstrate that appellate counsel failed to raise a meritorious issue on direct appeal and that he was thereby prejudiced. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 778, 100 P.3d 279 (2004). On direct appeal, Mr. Crick's appellate

counsel made the following arguments: (1) the evidence was insufficient, (2) the jury verdict lacked unanimity, (3) the trial court erroneously denied motions for mistrial, and (4) defense counsel was ineffective. As indicated, the trial court affirmed the judgment and sentence. Counsel was arguably deficient if Mr. Crick asked counsel to file a motion for reconsideration and counsel failed to timely do so, but to establish prejudice, Mr. Crick must show that the motion for reconsideration would have been granted. *See* RAP 12.4. Mr. Crick does not meaningfully attempt to make that showing.

In sum, the acting chief judge properly determined that Mr. Crick failed to establish an arguable basis for collateral relief, requiring his petition to be dismissed as frivolous. RAP 16.11(b); *Khan*, 184 Wn.2d at 686-87.

The motion for discretionary review is denied.

_Walta M Bunter_
DEPUTY COMMISSIONER

June 9th, 2017