UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATRICK S. CRICK,<br><br>                      Petitioner,<br><br>    v.<br><br>JAMES KEY,<br><br>                      Respondent. | Case No. 2:17-cv-1348-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Patrick S. Crick was a state prisoner when he filed his 28 U.S.C. § 2254 petition for writ of habeas corpus seeking relief from his 2013 Snohomish County Superior Court conviction for child molestation in the first degree. Mr. Crick is no longer in state custody but is subject to collateral consequences, such as registration and reporting requirements. Dkt. 13, Exhibit 1.

In his petition, filed on September 8, 2017, Mr. Crick presents three grounds for relief: (1) the State obtained his conviction through false testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959); (2) the State suppressed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1972); and (3) his appellate counsel rendered ineffective assistance. Dkt. 3. The State contends the petition is barred by 28 U.S.C. § 2244(d)(1), the federal one-year

REPORT AND RECOMMENDATION - 1

statute of limitations. In his response, Mr. Crick does not contest the State's claim that the petition was filed outside of the statute of limitations. However, he argues the Court should find that the statute of limitations was equitably tolled due to the egregious conduct of his appellate attorney. Dkt. 22.

After careful review of the petition, opposition, and balance of the record, the undersigned concludes that the petition is untimely, the statute of limitations was not equitably tolled, and therefore, the Court should deny the petition without reaching the merits.

## BACKGROUND

### A.     Statement of Facts

The Washington Court of Appeals summarized the facts underlying Mr. Crick's conviction as follows:

> In September 2012, K disclosed that Patrick Crick touched her breast and vaginal areas under her clothing one night during the summer of 2011 when she was 11 years old. The State charged Crick with child molestation in the first degree.
>
> At trial, the testimony established that during the summer of 2011, K stayed for a period of time at the rural home Crick shared with his girlfriend, who is K's cousin, and the girlfriend's two children. K was close friends with R, the girlfriend's daughter. K liked spending time with R's family.
>
> During this time, K and R set up a tent on the porch and slept there on some nights. One night, one or both girls asked Crick to come inside the tent with them before they fell asleep. Crick lay down between R and K. The three talked casually and then K fell asleep.
>
> K testified that a short time later, she was awakened by someone moving inside the tent. She opened her eyes slightly and saw Crick bending over her. He touched her chest area underneath her bra. A minute or two later, he placed his hand underneath her shorts and underwear and touched her vaginal area. K was afraid, felt "frozen," and did not say anything.

REPORT AND RECOMMENDATION - 2

>Crick then moved over to where R was sleeping and "hunched" over her for a few minutes. He then kissed each girl on the forehead and left the tent. K tried to awaken R but was unable to do so. She cried herself to sleep.
>
>The next day, K tried to act normally, but eventually told R what had happened. K asked R's mother if she could go home, but did not tell her the true reason she wanted to leave. R's mother told K she would have to wait because the family was already planning to go to K's home for a family birthday party a few days later.
>
>K did not tell her parents or any other adults what happened because she was "scared and nervous" and "just wasn't thinking right." After that incident, K did not return to R's house. K was not allowed to go to a subsequent family Christmas gathering because she failed to do a chore she was required to do. She was happy about this because she did not want to see Crick. K also told her family that she did not want R's family to come to a graduation party.
>
>More than a year after the incident, in September 2012, K's parents found a note she had written about a month earlier when she was thinking about running away. In the note, she referred to the touching incident. K's parents confronted her about the note, and she disclosed the details of what happened in the summer of 2011. K's parents also made her tell R's mother what happened. Both R's mother and K's parents reported the incident to Child Protective Services.
>
>R's mother remembered that R and K asked Crick to come into their tent one night in July 2011 when K was staying with the family. When Crick later came up to bed, he looked tired and told R's mother he had fallen asleep in the tent. Many months later, after she learned about K's allegations, R's mother confronted Crick, and he told her that before leaving the tent that night, he merely pulled down one of the girl's shirts. R also testified at trial but said she did not remember Crick ever coming into the tent, nor did she remember K telling her that Crick touched her.
>
>Crick testified on his own behalf about the night he went into the girls' tent. Crick said that he inadvertently fell asleep with the girls. He said that when he woke up, he was disoriented. As he was leaving the tent, he noticed that K's shirt was pushed up and her stomach was showing. He pulled it down because it was chilly. Then, he covered both girls with a blanket, kissed each one on the forehead, and left.
>
>The jury convicted Crick as charged. . . .

Dkt. 13, Exhibit 2 at 1-4.

REPORT AND RECOMMENDATION - 3

**B.     State Court Procedural History**

Mr. Crick appealed his conviction. Dkt. 13, Exhibits 3, 4, and 5. On June 8, 2015, the Washington Court of Appeals affirmed the conviction. *Id.*, Exhibit 2. Mr. Crick was represented by John R. Crowley. *Id.*, Exhibit 3. After his conviction was affirmed, Mr. Crick had twenty days to file a motion for reconsideration with the Court of Appeals (RAP 12.4) and thirty days to file a motion for discretionary review with the Washington Supreme Court (RAP 13.4). Mr. Crick had instructed Crowley to take his case to the highest court. Dkt. 22, Exhibit A at ¶¶ 3, 9 (Declaration of Patrick Crick).

On July 8, 2015, thirty days after the Washington Court of Appeals denied Mr. Crick's appeal, Crowley filed a motion to reconsider with the Washington Court of Appeals. *Id.*, Exhibit 6. On July 27, 2015, the Washington Court of Appeals denied the motion as untimely. *Id.*, Exhibit 7. Crowley did not tell Mr. Crick that he had filed the motion to reconsider and not a motion for discretionary review with the Washington Supreme Court, and also did not tell Mr. Crick when the Court of Appeals denied the motion to reconsider. *Id.*, Exhibit A at ¶ 10.

According to Mr. Crick, it was in late September or early October 2015, when he first learned that Crowley had filed the motion to reconsider, and not a motion for discretionary review, and that the motion to reconsider was denied as untimely. He learned this through a paralegal friend of his ex-fiancé, who looked up the case docket. *Id.*, Exhibit A at ¶ 11.

The Court of Appeals issued its mandate on September 25, 2015. Dkt. 13, Exhibit 8.

On August 16, 2016, Mr. Crick, acting pro se, mailed a Personal Restraint Petition for filing with the Washington Court of Appeals. Dkt. 13, Exhibit 9. The court denied the petition on October 3, 2016. *Id.*, Exhibit 10. Mr. Crick filed a motion for discretionary review with the

REPORT AND RECOMMENDATION - 4

Washington Supreme Court. *Id.*, Exhibit 13. Review was denied. *Id.*, Exhibit 14. Mr. Crick moved to modify the ruling, and that motion was denied on September 6, 2017. *Id.*, Exhibits 15, 16. A certificate of finality was issued on September 29, 2017. *Id.*, Exhibit 17.

Mr. Crick filed his federal habeas corpus petition on September 8, 2017. Dkt. 3. He was released from custody in October 2017. Dkt. 8.

**EVIDENTIARY HEARING**

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 536 U.S. 170, 181, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. Because the timeliness of Mr. Crick's claims can be determined from the state court record, no evidentiary hearing is necessary.

**DISCUSSION**

**A.     The Petition is Barred Under the Statute of Limitations, 28 U.S.C. § 2244(d)**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), habeas corpus petitions by persons imprisoned under a state court judgment are subject to a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(1)(A), "[t]he limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." Additionally, "[t]he

REPORT AND RECOMMENDATION - 5

time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added).

For purposes of 28 U.S.C. § 2244(d)(1)(A), direct review generally concludes and the judgment becomes final either upon the expiration of the time for filing a petition for writ of certiorari with the Supreme Court, or when the Court rules on a timely filed petition for certiorari. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). When there is no direct review or the direct review process terminates prior to reaching the state's highest court, however, the judgment becomes final on an earlier date. *Gonzalez v. Thaler*, 132 S. Ct. 641, 652-56 (2012); *Wixom v. Washington*, 264 F.3d 894 (9th Cir. 2001). If the intermediate appellate court affirms the judgment and sentence on direct appeal, and the petitioner does not timely seek review by the state supreme court, the direct review process concludes upon expiration of time for seeking review by the state supreme court and the judgment becomes final on that date. *Gonzalez*, 132 S. Ct. at 653-54.

Mr. Crick appealed his judgment and sentence to the Washington Court of Appeals. Dkt. 13, Exhibit 3. The court affirmed on June 8, 2015. *Id.*, Exhibit 2. Unless Mr. Crick filed a timely motion for reconsideration, he then had 30 days, until July 8, 2015, to file a petition for review to the Washington Supreme Court. RAP 13.4(a). Mr. Crick filed a motion for reconsideration, which the Washington Court of Appeals denied as untimely on July 27, 2015. *Id.*, Exhibits 6 and 7. Mr. Crick did not seek review by the Washington Supreme Court.

Because he never sought review by the Washington Supreme Court, the direct review process terminated when the deadline for seeking review by the Washington Supreme Court

REPORT AND RECOMMENDATION - 6

expired. Here, the deadline for seeking review expired 30 days after the Washington Court of Appeals issued its opinion on direct appeal. RAP 13.4(a). The Washington Court of Appeals issued its opinion on June 8, 2015 and therefore, the deadline for filing a motion for discretionary review expired on July 8, 2015. RAP 13.4(a). The direct review process ended and Mr. Crick's judgment and sentence became final for purposes of 28 U.S.C. § 2244(d)(1)(A) on July 8, 2015 and the statute of limitations began to run that same day. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 132 S. Ct. 641, 652-56 (2012); *Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001).

The statute of limitations started to run on July 8, 2015, and expired 365 days later on July 8, 2016. Mr. Crick filed his personal restraint petition on August 16, 2016. *Id.,* Exhibit 9. The statute of limitations is tolled while a properly filed post-conviction, collateral challenge is pending in state court. *See* 28 U.S.C. § 2244(d)(2); *Artuz v. Bennett*, 531 U.S. 4 (2000); *Pace v. DiGuglielmo,* 544 U.S. 408 (2005). But here, Mr. Crick filed his personal restraint petition *after* the statute of limitations had already expired and therefore, his personal restraint petition could not toll the already expired statute of limitations.

Even assuming the direct review process did not conclude until July 27, 2015 (the date the Washington Court of Appeals denied Mr. Crick's untimely motion for reconsideration), the limitations period (July 27, 2015 + 365 days = July 27, 2016) expired several weeks before Mr. Crick filed his personal restraint petition in state court (August 16, 2016) and over a year before he filed his habeas petition in federal court (September 8, 2017).

REPORT AND RECOMMENDATION - 7

Thus, Mr. Crick's federal habeas petition is untimely, and barred under the statute of limitations. Mr. Crick does not contend his petition was filed outside the statute of limitations. Rather, he argues the Court should find that that the statute of limitations was equitably tolled.

**B.     There is no Basis for Equitable Tolling**

AEDPA's one-year limitations period may be equitably tolled upon a showing that (1) the petitioner pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 632 (2010); *Fue v. Biter*, 842 F.3d 650, 657 (9th Cir. 2016); *Luna v. Kernan*, 784 F.3d 640, 646 (9th Cir. 2015). The inquiry sets a high bar, reserving equitable tolling for rare cases. *Yeh v. Martel*, 751 F.3d 1075, 1077 (9th Cir. 2014); *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). A petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

Under extraordinary circumstances, counsel's malfeasance may support equitable tolling. *Holland*, 560 U.S. at 652-53 (equitable tolling may be appropriate where post-conviction counsel effectively abandoned client); *Spitsyn*, 345 F.3d at 801 (statute of limitations equitably tolled where attorney was retained to prepare and file a habeas petition for incarcerated inmate, failed to do so, and then disregarded requests to return files pertaining to the case until well after the petition was due); *Gibbs v. Legrand*, 767 F.3d 879, 886 (9th Cir. 2014) ("[f]ailure to inform a client that his case has been decided, particularly where that decision implicates the client's ability to bring further proceedings and the attorney has committed himself to informing his client of such a development, constitutes attorney abandonment."); *Foley v. Biter*, 793 F.3d 998, 1003 (9th Cir. 2015) (equitable tolling warranted where counsel failed to communicate with

REPORT AND RECOMMENDATION - 8

client, failed to notify client that his habeas petition had been denied, and failed to withdraw as counsel so client could be served directly, where client believed counsel was representing him and expected a long delay before receiving a decision from the district court).

Relying on *Gibbs v. Legrand*, 767 F.3d 879, Mr. Crick argues that Crowley's conduct constitutes "extraordinary circumstances" because Crowley essentially "abandoned" him – that conduct consists of filing the motion for reconsideration instead of a motion for discretionary review; miscalculating the date for filing the motion for reconsideration; and failing to tell Mr. Crick that the motion for reconsideration had been denied. Based on this conduct, Mr. Crick contends he did not know that the federal limitation clock had started ticking. Dkt. 22, Exhibit A, Crick Decl.[1]

However, unlike the petitioner in *Gibbs* who, as a result of counsel's actions remained unaware that the state court had reached a decision in his case and that the federal limitations clock had started ticking, Mr. Crick received copies of briefs that Crowley filed on his behalf and copies of the State's responsive briefs; he learned in June 2015 that the Court of Appeals had denied his appeal when Crowley's office sent him a copy of the court's opinion; and in July 2015, he received a copy of the motion for reconsideration that Crowley filed on July 8, 2015. While Mr. Crick may have misunderstood the legal significance of the motion (he alleges he thought the motion sought review by the Washington Supreme Court), the described conduct does not constitute "abandonment."

---

[1] Crowley resigned from the Washington State Bar Association in September 2017 in lieu of discipline for complaints of misconduct by five former clients. These complaints are unrelated to the conduct under review here. Dkt. 22, Exhibit B at 6-22.

REPORT AND RECOMMENDATION - 9

Even if Mr. Crick's counsel acted negligently, that negligence would not constitute an "extraordinary circumstance" under equitable tolling law. *See Maples v. Thomas*, 565 U.S. 266, 281 (2012) (restating "that an attorney's negligence, for example, miscalculating a filing deadline, does not provide a basis for tolling a statutory time limit") (citing *Holland v. Florida*, 560 U.S. 631, 651–52 (2010) and *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007)); *see also Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (petitioner's inability to correctly calculate the limitations period prescribed by 28 U.S.C. § 2244 is not a basis for equitable tolling); *Vanderpool v. Popoff*, No. 2:15–cv–01199–PK, 2017 WL 1102754, *2 (D. Or. Feb. 14, 2017) (same). Similarly, Mr. Crick's counsel's failure to inform Mr. Crick that the Washington Court of Appeals had denied the motion for reconsideration amounted to garden variety negligence, not professional misconduct warranting equitable tolling. *Cf. Luna v. Kernan*, 784 F.3d 640 (9th Cir. 2015) (finding counsel affirmatively misled the petitioner to believe a timely petition had been filed, in addition to committing other professional misconduct, thereby transcending garden variety negligence and constituting an "extraordinary circumstance.").

Further, the alleged late discovery of the significance of the motion for reconsideration, and the Court of Appeals' denial of that motion did not prevent Mr. Crick from timely filing a federal petition. Mr. Crick acknowledges that by early in October 2015, he knew that the motion his counsel filed was a motion for reconsideration, not a petition for review, and that the state court had denied the motion as untimely. Dkt. 22, Exhibit A, Crick Decl., at 2. Thus at that time, Mr. Crick knew or should have known that the federal statute of limitations had already started to run on July 8, 2015, and that he had until July 8, 2016 until the statute of limitations expired. To the extent Mr. Crick claims that after October 2015 he did not understand when the statute of

REPORT AND RECOMMENDATION - 10

limitations started to run, such a misunderstanding is simply a miscalculation of the statute of limitations and is not an exceptional circumstance external to Mr. Crick that stood in the way of his filing a timely federal habeas corpus petition.

Moreover, Mr. Crick does not explain why he waited until August 2016 to file his personal restraint petition. Mr. Crick admits he knew at least as of October 2015 that the state court had denied the motion for reconsideration as untimely, but he still waited ten months to file a personal restraint petition and then chose to wait until that collateral proceeding had run its course before filing his federal petition. Mr. Crick has shown no egregious conduct that stood in his way and prevented him from filing a timely federal petition nor has he shown that he was diligently pursuing his rights during that time.

Because Mr. Crick filed his petition outside of the § 2254 statute of limitations period and is not entitled to equitable tolling of the limitations period, his petition is time-barred and should be denied without reaching the merits of his claims.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

REPORT AND RECOMMENDATION - 11

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, this Court concludes that Mr. Crick is not entitled to a certificate of appealability in this matter.

## CONCLUSION

For the foregoing reasons, this Court recommends that Mr. Crick's federal habeas petition be dismissed with prejudice pursuant to 28 U.S.C. § 2244(d)(1).  This Court further recommends that a certificate of appealability be denied.  A proposed order accompanies this Report and Recommendation.

Any objections to this Recommendation must be filed no later than **July 9, 2018**.  The matter will be ready for the Court's consideration on **July 11, 2018.**  Objections shall not exceed twelve (12) pages.  The failure to timely object may affect the right to appeal.

DATED this  21st  day of June, 2018.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 12